IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW Z.,[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security,[2] ) <br> ) <br> Defendant. ) <br> ) | No. 20 C 5698 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Matthew Z.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision is granted, and the Commissioner's motion for summary judgment [Doc. No. 15] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

In May 2018, Plaintiff filed applications for DIB and SSI, alleging disability since April 1, 2015 due to mental impairments. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 12, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Plaintiff's mother and a vocational expert also testified.

On September 26, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 1, 2015. At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder; schizoaffective disorder; and anxiety disorder. The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal

2

a Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the full range of work at all exertional levels, and further that he was capable of understanding simple and multi-step instructions; sustaining attention and concentration for simple and multi-step tasks; maintaining effort for two-hour periods over the course of an eight-hour workday and a standard work week within acceptable pace and persistence standards. The ALJ concluded that Plaintiff's stress tolerance is acceptable for a stable work setting with routine, repetitive tasks; he is able to adapt to minor changes in routine; and he is capable of independent goal-directed behavior.

At step four, the ALJ concluded that due to his mental impairments, Plaintiff would be unable to perform his past relevant work as a packer. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if they have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a

Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id*. The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id*.

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Skinner v.*

4

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate

5

the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error because she incorrectly weighed the opinion of his treating psychiatrist, and the RFC assessment did not include all of his limitations.

#### A. Treating Physician Opinion

Because Plaintiff filed his claim in 2018, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under this regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those

6

from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff saw treating psychiatrist Dr. Xu from February 2015 through January 2019. Dr. Xu diagnosed Plaintiff with bipolar disorder and confirmed depression. In January 2019, he completed a questionnaire provided to him by Plaintiff's attorney. The form asked multiple choice questions only and did not include any space for narrative responses. Dr. Xu concluded that Plaintiff was markedly limited in the areas of maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within ordinary tolerances; working in close

7

proximity to others without distraction; performing at a consistence pace without an unreasonable number and length of rest periods; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently of others. (R. 486-88.) He found moderate or insignificant limitations in other areas.

The ALJ gave little weight to Dr. Xu's opinion because it lacked a narrative portion explaining the basis for his conclusions; the treatment notes from the quarterly visits did not support the degree of limitation assessed; and "the claimant's stable presentation throughout his conservative course of treatment and few medication changes is not indicative of 'marked' mental limitation." (R. 20.) In finding that the opinion was inconsistent with the record, the ALJ was especially persuaded that there had been few changes to Plaintiff's medication regimen.

The Court concludes that the ALJ failed to provide adequate reasons for discounting Dr. Xu's opinion. Plaintiff's diagnoses are not disputed, and for several years, he has taken Lithium, Effexor-XR, and Abilify. The fact that Plaintiff's medications did not change significantly over time, and he was deemed to be stable or occasionally improving, does not by itself demonstrate an inconsistency between Plaintiff's treatment and the report's conclusions. *See Nancy K. v. Saul*, No. 19 C 3137, 2020 WL 4273976, at *4 (N.D. Ill. July 24, 2020) (explaining that "stable" merely means "unchanged" and "does not shed any light on the nature and severity of a claimant's overall condition or her RFC").

8

The ALJ also dismissed Plaintiff's treatment as "conservative" without explanation. Plaintiff's lack of "emergent or extended inpatient mental health care" is not inconsistent with Dr. Xu's opinion that Plaintiff suffered the impairments listed in the questionnaire. (R. 20.) It is not obvious why a person who suffers disabling limitations in the areas of persistence and concentration would require inpatient treatment, and the ALJ therefore should have explained why she considered the lack of hospitalization to be relevant. Dr. Xu's treatment notes also demonstrate his belief that Plaintiff would benefit from further treatment. He repeatedly referred Plaintiff to an intensive outpatient program, but due to compliance and motivation issues, Plaintiff did not complete one until late 2018, and even afterwards, the ALJ noted that "Dr. Xu continued to recommend IOP, despite this history of noncompliance, poor motivation, resistance, and questionable reported benefits." (R. 19.) The ALJ nevertheless found Plaintiff's treatment to be conservative based solely on his lack of hospitalization and relatively stable dosages of medication.

Notably, the ALJ did accept and rely on some of Dr. Xu's conclusions, *i.e.*, that Plaintiff was not significantly limited in interacting with the public and would be moderately limited in responding to criticism from supervisors or working with peers without distraction or behavioral issues. (R. 16.) She did not, however, explain why she found that aspect of the opinion to be more credible than the portions of the questionnaire finding greater impairments. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's

9

report that support a finding of non-disability while ignoring other portions that suggest a disability.").

### B. Symptoms and RFC

In her step 3 analysis, the ALJ found that Plaintiff had moderate limitations in remembering or applying information and concentrating, persisting, or maintaining pace. She emphasized that "[t]he claimant's most significant alleged issues appear to be related to completing tasks." (R. 16.) The ALJ noted that although Plaintiff is compliant and not rebellious, he will only "complete tasks when supervised and pressed." (R. 16.) The RFC determination, however, did not specifically address Plaintiff's deficits in completing tasks, instead finding that that he could sustain attention and concentration generally and maintain effort for two hours at a time throughout the workday; and that "[h]e is capable of independent goal-directed behavior." (R. 17.) This assessment was based on the DDS consultant's opinion, which the ALJ found to be consistent with the examination findings and Plaintiff's conservative course of treatment.

The record contains ample evidence consistent with Plaintiff's claim that he suffers from significant impairments in the area of motivation and persistence and cannot complete tasks without substantial encouragement and direction, but the ALJ failed to either incorporate these limitations in the RFC or explain why they were not. At step 3, the ALJ suggested that Plaintiff's activities of daily living are inconsistent with a disability, specifically because he sees friends a few times a week and takes his sister to school. First, the ALJ did not describe how occasionally

10

seeing friends and driving a sibling to school equates to the ability to engage in full-time employment. *See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). Second, the record shows that Plaintiff does not accomplish even these limited activities without difficulty. His mother testified that "[h]is sister gets after him to take her to school," (R. 55), and Plaintiff only visits his friend's house at his mother's urging, and otherwise "he would just lay at home." (R. 57.) Plaintiff's mother also testified that he often fails to complete small lists of chores she lays out for him, and he does not even consistently take the dog out to relieve itself. (R. 55-56.) Plaintiff's lack of motivation was also shown by his repeated failure to pursue the IOP as recommended by Dr. Xu. The claimed limitation is therefore consistent with the entire record, including his activities of daily living, his mother's testimony, and the psychiatrist's opinion. Accordingly, the ALJ's failure to address it in her RFC finding requires remand.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision is granted, and the Commissioner's motion for summary judgment [Doc. No. 15] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**          **ENTERED:**

**DATE:**    **February 25, 2022**          _____
                                                        **HON. MARIA VALDEZ**
                                                        **United States Magistrate Judge**